## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

EUSTATHIOS KARAVITIS,         :
     Plaintiff,               :
                              :
     v.                     :         3:14-cv-00913 (VLB)
                              :
MAKITA U.S.A., INC.         :         March 20, 2017
     Defendant.           :

### MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. 64] AND MOTION TO EXCLUDE EXPERT TESTIMONY [DKT. 66]

I.   **Introduction**

Plaintiff Eustathios Karavitis ("Karavitis" or "Plaintiff") brings this products liability action against Defendant Makita U.S.A., Inc. ("Defendant" or "Makita") under Connecticut's Product Liability Act ("CPLA"), Conn. Gen. Stat. f 52-572n(a). The Defendant moved for summary judgment and to exclude Plaintiff's expert in December 2015.  [Dkt. 42 (Motion to Exclude), 43 (Motion for Summary Judgment).]  The Court denied both motions without prejudice to re-filing addressing legal issues recently addressed by the Connecticut Supreme Court. [Dkt. 63.]  Defendant filed a supplemental Motion for Summary Judgment [Dkt. 64] and renewed Motion to Exclude Plaintiff's Expert [Dkt. 66], incorporating exhibits from his prior filings.  Plaintiff responded to each motion also incorporating exhibits from its prior filings.  [Dkt. 65 (Supplemental Summary Judgment Opposition), 70 (Renewed Opposition to Motion to Exclude Expert)].  For the reasons that follow, Defendant's motions are GRANTED.

II.    **Factual Background**

Makita is an international corporation with ten factories worldwide which assemble and manufacture, among other products, handheld circular saws. [Dkt. 43-9, Deposition Transcript of David Haefner ("Haefner Tr.") at 26-27]. Plaintiff is a Connecticut resident who graduated from the University of Connecticut at Storrs in 1992 with a degree in Business Administration and completed a Master of Business Administration in 2002. [Dkt. 43-4, Deposition Transcript of Karavitis ("Karavitis Tr.") at 10-11]. He has done home renovation work throughout his life, including a full year spent working for a construction company in 1995 building homes "from the ground up" and recreational projects for himself and others including building decks, stairways, railings, window trim, and installing doors and cabinets. *Id.* at 19-20, 23. Plaintiff has owned and used a variety of power tools for his renovations, including circular saws. *Id.* at 22.

In around 1998, Plaintiff purchased a Makita Circular Model Saw 5007 NBA (the "Circular Saw") from a store (he recalls the store was "most likely" Home Depot). Karavitis Tr. at 30-31. The Circular Saw came with an instruction manual which Plaintiff kept "as long as [he] can recall." *Id.* at 33. Plaintiff "perused" the manual when he purchased the Circular Saw, "read the highlights, read the important information," understood the manual, and had no questions about saw safety upon reading the manual. *Id.* at 35. He did not re-read the manual after his first year of Circular Saw ownership. *Id.* at 34.

The Circular Saw manual states: "Use clamps or other practical way to secure and support the work piece to a stable platform. Holding the work by

hand or against your body is unstable and may lead to loss of control." [Dkt. 43-10 (Manual) at 3]. The manual also states: "Danger! Keep hands away from cutting area and blade. Keep your second hand on auxiliary handle or motor housing. If both hands are holding the saw, they cannot be cut by the blade." Karavitis Tr. at 82; Manual at 4. The manual further instructs to "[k]eep your body position to either side of the saw blade but not in line with the saw blade. KICKBACK could cause the saw to jump backwards." Karavitis Tr. at 83; Manual at 4. In a section titled "Causes and operator prevention of kickback," the manual explains that kickback occurs when "the blade becomes twisted or misaligned in the cut," and causes "the blade to climb out of the kerf and jump back toward the operator." Manual at 5. To prevent kickback, the manual instructs: "Maintain a firm grip with both hands on the saw and position your body and arm to allow you to resist kickback forces." Karavitis Tr. at 84; Manual at 5. The manual also instructs: "ALWAYS hold the tool firmly with both hands. NEVER place your hand or fingers behind the saw. If kickback occurs, the saw could easily jump backwards over your hand, leading to serious personal injury." Karavitis at 85; Manual at 6.

Plaintiff could not recall at the time of his deposition whether there were any warnings on the Circular Saw itself. Karavitis Tr. at 42. In fact, there was a label on the Circular Saw which warned users in relevant part: "DANGER: Keep hands away from blade." [Dkt. No. 43-13 (Photo of Warning Label) at 3.] The warning is written in metallic silver on a blue background with the word "Makita"

in red above the warning and the words "Makita Electric Works Ltd." in red below the warning.  *Id*.

Plaintiff used the Circular Saw without any problem "over 50" times and "quite possibly" over 100 times for various home improvement projects before March 17, 2013.  *Id*. at 40, 42.  Plaintiff made no alterations to the Circular Saw, nor did anyone else to his knowledge, except replacing the blade when it became dull and reinforcing the electrical cord with electrical tape.  *Id*. at 43.

On March 17, 2013, approximately 15 years after he purchased it, Plaintiff went to his mother's house in Fairfield, Connecticut with the Circular Saw to cut trim for her front door.  *Id*. at 47-51.  Plaintiff used the Circular Saw to cut trim multiple times prior to March 17, 2013.  *Id*. at 50.  Plaintiff placed a piece of pine approximately eight feet long, three inches wide, and one inch thick "on a couple of small rectangular type tables."  *Id*. at 53, 62.  Plaintiff secured the piece of wood with his left hand.  *Id*. at 55.  He was not wearing gloves or protective eye gear.  *Id*. at 65, 69.  Plaintiff did not clamp down the wood as the instructions directed; instead he supported the piece of wood by placing his left hand in front of the saw blade as he cut the majority of the piece of wood, then moved his hand to support the wood from behind the saw blade as he neared the end of the piece of wood.  *Id*. at 67.  When the Circular Saw was approximately one foot in front of Plaintiff's left hand, the saw "kicked back," meaning it "came back, jumped up . . . bounced out [of the wood]  . . . enough to cut [Plaintiff's] finger."  *Id*. at 69.  When Plaintiff felt the Circular Saw begin to kick back, he removed his right index finger from the trigger "instantaneously," but kept his right hand on the saw because

"you have to hold onto the saw, because you don't know what's going to happen to it." *Id.* at 72. The Circular Saw hit Plaintiff's left thumb above the first knuckle. *Id.* at 73.

Plaintiff waited for the Circular Saw blade to stop spinning, set down the saw, rinsed his thumb with water, wrapped it in paper towels, and drove himself to Bridgeport Hospital. *Id.* at 80-81. Hospital staff sutured his severed blood vessel, closed the wound with approximately eight stitches, wrapped his thumb, and released him. *Id.* at 89-90.[1] Plaintiff underwent one additional surgery roughly one week later. *Id.* at 91-92. He saw his treating physician regularly through July 2013 for follow-up appointments after the accident and participated in physical therapy. *Id.* at 94. As of his deposition, Plaintiff experienced pain "all the time" and feels he cannot bend his left thumb as far as his right thumb. *Id.* at 96, 99.

III.   <u>Standard of Review: Motion to Exclude Expert</u>

Plaintiff offers an expert report by Lewis Barbe ("Barbe") in support of his products liability claims. The Court addresses Defendant's Motion to Exclude Plaintiff's Expert here.

Motions to exclude evidence should "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). The

---

[1] Plaintiff's medical records were not filed with Summary Judgment briefing; the Court's recitation of the facts regarding Plaintiff's injury is based on Plaintiff's deposition testimony. It appears from the deposition transcript that portions of Plaintiff's medical records were used as exhibits during the deposition.

Federal Rules of Evidence charge the Court with the responsibility of deciding the preliminary question of whether a witness is qualified.  Fed. R. Evid. 401(a). A motion to exclude evidence "calls on the Court to make a preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence."  *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 470 (S.D.N.Y. 2005).  Evidence should be excluded "only when the evidence is clearly inadmissible on all potential grounds."  *Id.*

Expert witness testimony is admissible only if: (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "the testimony is based upon sufficient facts or data;" (3) "the testimony is the product of reliable principles and methods;" and (4) "the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  Although Rule 702 embodies a "liberal standard of admissibility for expert opinions," *Nimely v. City of N.Y.*, 414 F.3d 381, 395 (2d Cir. 2005), it also "establishes a standard of evidentiary reliability" for "all scientific, technical, or other specialized matters within its scope."  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148 (1999). What constitutes a "reasonable measure[] of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine."  *Id.* at 153.

"Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time.  These provisions afford ample assurances against the admission of opinions which would merely tell the jury what results to reach."  *Hygh v. Jacobs*, 961 F.2d 359, 363-64 (2d Cir.

1992).  An expert may not "simply rehash otherwise admissible evidence about which he has no personal knowledge . . . While an expert must of course rely on facts or data in formulating an expert opinion, an expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence.  *Schneider*, 379 F. Supp. 2d at 468-69 (citing Fed. R. Evid. 703).

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403. "The case law recognizes that certain circumstances call for the exclusion of evidence which is of unquestioned relevance.  These circumstances entail risks which range all the way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme. Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission."  Notes of Advisory Committee on Proposed Rules.  "Unfair prejudice" within this context means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  *Id.*  Rule 702 requires a valid scientific connection to the inquiry as a prerequisite to admission.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993).

 Analysis: Motion to Exclude Expert

Defendant moves to exclude Barbe's testimony because Barbe lacks the qualifications required to testify as an expert on circular saws and because

Barbe's conclusions are not supported by acceptable methodology.  [Dkt. 66.]
The Court addresses each challenge to Barbe's report below.

     A.   <u>Plaintiff's Expert's Credentials</u>

The trial judge must ensure that any and all scientific evidence is not only
relevant but also reliable based on its scientific validity, meaning that the expert
opinion is based on scientific principles which support what they profess to
show. *Daubert*, 509 U.S. at 589-90.  "District courts are accorded considerable
discretion to determine an expert's qualifications." *United States v. Diallo*, 40
F.3d 32, 34 (2d Cir.1994).  A witness is qualified where he or she has "superior
knowledge, education, experience, or skill with the subject matter of the proffered
testimony." *Vale v. U.S.*, No. 15-3265, 2016 WL 7435909, at *1 (2d Cir. Dec. 21,
2016) (summary order) (finding an expert unqualified to testify as to plaintiff's
medical diagnosis where expert was trained in a different medical discipline, had
no a valid license to practice medicine, and had not practiced medicine in 16
years).

"The expert's qualifications . . . must be relevant to the opinions she offers.
Whether a witness is qualified as an expert can only be determined by comparing
the area in which the witness has superior knowledge, skill, experience, or
education with the subject matter of the witness's testimony." *Diallo*, 40 F.3d at
34 (finding expert qualified who had never been to Benin but had advised
neighboring African countries about their gold export policies relying on their
gold export regulations, reasoning that experience meant the expert was able to
evaluate the effect Benin's regulations had on exporting gold from Benin); *see*

*also Duchimaza v. U.S.*, 2016 WL 5799295, *5 (D. Conn. Sept. 30, 2016) (finding expert's 22 years of experience in retailer compliance before the EBT program was implemented insufficient to qualify him as an expert in identifying EBT fraud).

In this case, Barbe states he obtained a Bachelor of Science in Fire Protection and Safety Engineering from Illinois Institute of Technology ("IIT") in 1954. [Dkt. No. 66-6 (Report) at BARBE00888.] He states his coursework included "mechanical, electrical, and safety engineering" courses; however, he does not describe the titles of the courses he took or their curriculum. *Id.* He provided insufficient information to enable the Court to find that his degree qualifies him to offer credible expert testimony on the safe design of circular power saws. *Id.*

Moreover, the title of the degree he professes to have earned suggests that he may be an expert in fire safety as opposed to power tool design safety, much less circular saw design safety which is at issue here. IIT no longer offers a Bachelor of Science in Fire Protection and Safety Engineering, but does offer a Graduate Certificate by the same name. https://engineering.iit.edu/programs/graduate-certificate/graduate-certificate-fire-protection-and-safety-engineering. The Graduate Certificate requires students to complete four out of six courses: (1) risk assessment engineering; (2) sprinklers, standpipes, fire pumps and special suppression and detection systems; (3) introduction to fire dynamics; (4) fire protection and life safety in building design; (5) probability concepts in civil engineering design; and (6) special problems in fire protection

and safety engineering.  *Id.*  The course concentration is decidedly in the area of fire safety and not mechanical engineering or another discipline relevant to circular saw design safety.   The Court cannot determine the course requirements of the Bachelor of Science Barbe received, but cannot conclude from the information available that it lent Barbe "superior knowledge . . . or education" in the "subject matter of the witness's testimony," which is the safety of circular saws with and without riving knives and the adequacy of circular saw warnings. *Diallo*, 40 F.3d at 34.

Nor can the Court conclude Barbe has relevant "superior knowledge, skill, [or] experience" from his other credentials.  Barbe's curriculum vitae ("CV") states he holds multiple certifications and organization memberships, but also does not indicate what is required to obtain those credentials or what he does as a member of the listed groups.  [Dkt. 54 at Ex. A (CV).]  For example, Barbe's report indicates he is a registered professional engineer in safety engineering in Massachusetts and California and a registered products safety engineer with Board of Products Safety Management, but gives no information regarding what those registrations entail or whether they involve circular saw safety.  [Dkt. 66-6 (Report) at BARBE00888.]  The most specific credential Barbe lists in his report is his past membership in the Fraternal Order of Foresters, where he states he specialized in evaluating saws.  *Id.*  However, Barbe does not state whether he ever evaluated circular saws with or without riving knives or explain the content of his evaluations.  *Id.*  Regardless, he was last involved with the Fraternal Order of Foresters approximately ten years before his July 2015 deposition.  [*Id.*; Dkt.

66-4 (Deposition Transcript of Lewis Barbe ("Barbe Tr.") at 49.] The Court cannot determine from Barbe's report or deposition testimony whether his certifications or memberships are relevant or support his qualification as an expert in circular saws, riving knives, or warning labels.

Barbe's explanation of his experience also fails to qualify him as a relevant expert. Barbe states he has spent his career as a safety engineer "concerned with the safe performance of products, processes, operations, and services." Report at BARBE00888. This broad description does not indicate with which products, processes, operations, and services Barbe has professional safety experience. He also states he has been "in full professional practice as a private consulting engineer for over 25 years," and has "taught courses that involved saw safety." *Id.* Once again, this vague statement does not indicate when or where he taught the courses, the curriculum for the courses, or whether they related to fire safety or circular saw design safety. Nor does he assert any experience with riving knives or analyzing warning labels. *Id.* Barb's professional affiliations are either clearly irrelevant (for example, membership in the American Industrial Hygiene Association and National Fire Protection Committee 505) or so vaguely described that they either appear irrelevant or the Court cannot discern their relevance (for example, membership in the American Society of Safety Engineers and registration as a Safety Engineer in the Commonwealth of Massachusetts). [Dkt. 54 at Ex. A (CV).] The Plaintiff has failed to establish that Barbe's education, training and experience give him the requisite "superior knowledge, skill, experience, or education" to offer credible expert

opinions on the safe design of handheld circular saws, riving knives, and warning labels. *Diallo*, 40 F.3d at 34

 Barbe's lack of education, training and experience and his inability to offer credible expert opinions on the safe design of handheld circular saws, riving knives, and warning labels is exemplified by his proffered expert report and deposition testimony.  Barbe states he spends roughly one third of his professional time serving on various safety committees that promulgate safety standards applicable to the circular saw.  *Id.* at BARBE00889; Barbe Tr. at 53. Yet, his deposition testimony made clear that his education, training and experience, including his involvement in safety standard organizations, has not qualified him as an expert in the relevant safety standards.  Barbe's expert report was permeated with critical errors.  Specifically, he applied inapplicable standards in reaching his conclusion.  For instance, Barbe admitted he considered a 2013 safety standard for woodworking machinery which specifically excludes handheld power tools.  Barbe Tr. at 154-55.  Barbe also considered a safety standard applicable to stationary and fixed electric tools rather than handheld power tools like the Circular Saw in question.  *Id.* at 156-57.  He also considered a safety standard that did not go into effect until 2012, approximately 15 years after Plaintiff purchased the Circular Saw.  *Id.* at 160; *see also Izzarelli v. R.J. Reynolds Tobacco Co.*, 321 Conn. 172, 184 (2016) (to establish a products liability claim, the plaintiff must show the "defect existed at the time of the sale").  Even if these errors were explained and the jury told to disregard them, Barbe's report has great potential to confuse a jury.  While the Court has no doubt that Barbe may be

qualified to offer expert testimony on some subject,  Plaintiff has failed to show that Barb has the education, training and experience to offer credible relevant expert testimony in this case.

   **Plaintiff's Expert's Analysis**

   Barbe's analyses regarding the Circular Saw's alleged design defect and deficient warning label are also insufficient to constitute admissible expert testimony.  Under *Daubert*, Courts determine the reliability of an expert's analysis by considering "the theory's testability, the extent to which it 'has been subjected to peer review and publication,' the extent to which a technique is subject to 'standards controlling the technique's operation,' the 'known or potential rate of error,' and the 'degree of acceptance' within the 'relevant scientific community.'" *Restivo v. Hessemann*, 846 F.3d 547, 575–76 (2d Cir. 2017) (citing *U.S. v. Romano*, 794 F.3d 317, 330 (2d Cir. 2015); *Daubert*, 509 U.S. at 593–94, 113 S. Ct. 2786).

   If an expert "wants to testify to an opinion or conclusion that has not been established to a degree of scientific certainty . . . the court must still assess whether the expert employs "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," and may consider the *Daubert* factors in making this determination or other relevant factors. *Kumho Tire Co.*, 526 U.S. at 152.  Whether expert analysis is based on experience or training as opposed to a methodology or technique, "trial judge should exclude expert testimony if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison."  *Zerega Ave. Realty Corp.*

**13**

*v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 214 (2d Cir. 2009); *Duchimaza v. United States*, No. 3:14-CV-00887, 2016 WL 5799295, at *5 (D. Conn. Sept. 30, 2016).  Expert opinions must likewise be excluded where the court "conclude[s] that there is simply too great an analytical gap between the data and the opinion proffered."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Restivo*, 846 F.3d at 546.

  i. <u>Plaintiff's Expert's Design Defect Analysis</u>

  Barbe's report states he analyzed the Circular Saw using "generally accepted safety engineering principles, theories, and methodology."  Report at BARBE00889.  He asserts the "generally accepted methodology entails reviewing the design performance to identify hazards with a risk of serious injury or death," establishing "control barriers to show what could have been done or should have been done to prevent injury," and, if possible, eliminating the hazard without impairing product function.  *Id.* at BARBE00889-90.

  Barbe's report indicates that in evaluating the Circular Saw, he interviewed Plaintiff, inspected and otherwise operated the Circular Saw, performed a "trap guard" test on the Circular Saw, attended the defense expert's inspection of the Circular Saw, reviewed Plaintiff's deposition testimony, the Circular Saw manual, various pictures, and Plaintiff's medical records, and compiled a list of standards, codes, rules and regulations.  *Id.* at BARBE00892.

  Barbe elaborated on the tests he conducted with the Circular Saw at his deposition.  He explained the "trap guard" test: "The spring, you -- you push it back, and you let it go, and it -- it -- it -- it rebounds."  Barbe Tr. at 113-14.  Barbe

also tested the Circular Saw's trigger by "turning the saw off and on," tested the Circular Saw's operation by cutting a piece of wood of the same type and dimensions as the wood Plaintiff was cutting at the time of his injury. *Id.* at 119. He tested the Circular Saw's operation once and found it "cut the wood fine." *Id.* Barbe also tested the Circular Saw's bevel setting. *Id.* at 14-15.  He did not document his tests or take precise measurements.  Barbe Tr. at 115-16.  Barbe indicated he watched the defense expert conduct additional tests of the Circular Saw, including timing how quickly the lower blade guard closed and checking whether the blade was warped. *Id.* at 125-27.  Barbe has conducted no tests or studies on the Circular Saw or any other portable handheld circular saw to determine how it would move during kickback with or without a riving knife. *Id.* at 243-44.

Barbe has not shown the tests he performed are generally accepted tests to determine the safety of a portable handheld circular saw of the same type as the Circular Saw in question, or that a riving knife would have improved its safety. Conversely, Barbe has not established that there were no other tests necessary to determine the Circular Saw's safety or the efficacy of a riving knife.  Instead, Barbe's report quotes various publications stating that the general purpose of a riving knife is to reduce kickback, and that riving knives are required on hand saws in other countries.  Report at BARBE00892-901.  For example, Barbe's report includes the following excerpt without context or analysis:

> In the November, 1978 Edition of Safety Management, under the title "Safety in the Use of Woodworking Machines," the author had this to say regarding a riving knife.  The main purpose of a riving knife is to prevent the sides of an incomplete cut from closing on the up-

> miming part of the saw . . . it also provides a good measure of
> protection against contact with the cutting edge at the back of the
> saw.

BARBE00895.  This statement does not suggest that a riving knife is an essential

safety feature nor does it suggest that the industry standard at the time the saw

in question was manufactured was to include a riving knife.  The comment was

not included as part of Barbe's professional analysis of the applicable safety

standards.

Barbe's citation to the manufacturing standards for knives adopted by

other countries is also presented without context or analysis.  All his report

states is that:

> Sawing in the Carpentry Shop, German publication, Vol. 62, No. 5
> 'Portable circular saws should be fitted with a fixed and a mobile
> protective hood; if the depth of the cut is greater than 18 millimeters,
> they must henceforth be also equipped with a riving knife.'

BARBE00896.  Barbe offers no comparison of the design and operation of the

German saws referred to in the comment and the saw at issue here.  The reader

cannot discern the applicability of the statement to the Circular Saw and thus the

statement is of no utility and Barbe's conclusions based on the comments cannot

be tested.  The quotations in Barbe's report do not establish, or purport to

establish, that the Circular Saw was unsafe as designed without a riving knife.  *Id*.

Barbe does not provide any independent analysis of the cited sources explaining

how they support his conclusions.  *Id*.

Without detailing generally accepted tests and analyses used to determine

handheld circular saw safety and then presenting the results of those tests when

performed on the Circular Saw, Barbe's conclusions would not be useful to a fact

finder.  Barbe's statement that he is "a safety engineer and all of [his] opinions are engineering opinions, stated to be a reasonable degree of engineering certainty" is insufficient by itself to render his report useful or his conclusions admissible under *Daubert*.  *Id*. at BARBE00890.

     **B.**    <u>**Plaintiff's Expert's Failure to Warn Analysis**</u>

Barbe's conclusion that the warnings on the Circular Saw and in the Circular Saw manual were insufficient also fails to qualify as an admissible expert opinion.  Barbe asserts in his report that "[t]here are no warning (Danger signal words) on the saw or riving knife provided," but does not explain what "danger signal words" are or whether they are necessary.  BARBE00892.  Nor does Barbe support the suggestion that "danger signal words" are necessary with his own relevant knowledge or experience or by explaining that they are generally accepted as necessary within the community of "safety engineers." *Id*.  The only other mention of warnings in Barbe's report states:

> Safety Engineering principles states that Makita has a duty to warn of dangers of the saw which it knows, or should have known.  Makita did not do this adequately since the information furnished by Makita [sic] did not conform to the American National Standard Z 535.4 standard which sets forth requirements for the design, application, use, and placement of safety signs and labels at the hazardous locations (no warnings were on the saw that would meet the standards), instruction manuals did not provide proper warnings that would meet ANSI requirements)[.]  This was a contributing cause of this incident."

BARBE00901.

Barbe does not elaborate on the requirements for safety signs and labels set forth in American National Standard ("ANSI") Z 535.4.  Nor could he opine that these requirements apply to the Circular Saw because, according to his own

deposition testimony, ANSI Z 535.4 was not enacted until after the Circular Saw was manufactured and therefore does not apply to the Circular Saw.  Barbe Tr. at 95-96; *Izzarelli*, 321 Conn. at 214.

Barbe did testify that although ANZI Z 535.4 was not in effect at the time of the Circular Saw's manufacture, it "didn't change the – the intent or the – the state of the art of the industry in promulgating warnings."  *Id.*  Barbe does not cite or present the applicable warning standard.  Nor does he cite to any other authority for what he describes as the state of the art of the industry in promulgating warnings.   As a result, even if the safety standard applicable when Makita made the Circular Saw was substantially similar, Barbe has not established the Circular Saw's warnings violated that standard.  Barbe admitted at his deposition that the words "Warning," "Danger," and Caution" on the warning label on the Circular Saw are signal words as required by ANSI Z 535.4.  Barbe Tr. at 138.  He asserted the warning label was still insufficient because the signal words should be followed by "the consequences of the accident or the warning."  *Id.* at 139.  Barbe gave an example: "[I]f you tell a person 'Don't drive over 35 miles an hour,' doesn't mean anything.  But if you say, 'If you go over 35 miles an hour, I guarantee the tire is going to blow out and you're going to – you're going to have an accident,' then they listen."  *Id.*  However, Barbe does not indicate whether the need for justifications was encompassed in the "signal words" requirement he asserts (without support) was applicable when Plaintiff purchased the Circular Saw.  *Id.* at 96, 139.

Further, even if Barbe had offered sufficient information to conclude signal words with justifications were required as part of effective warnings during the relevant time period, it is not clear Makita failed to include them.  Although the warnings on the Circular Saw do not include "justifications," the Circular Saw's instruction manual does include them.  [Dkt. 43-13 (picture of warning label which reads "DANGER: Keep hands away from blade"); Manual at 6.]  The instruction manual uses numerous "signal words" with justifications, including the language: "ALWAYS hold the tool firmly with both hands.  NEVER place your hand or fingers behind the saw.  If kickback occurs, the saw could easily jump backwards over your hand, leading to serious personal injury."  Manual at 6.  Barbe gives no opinion whether signal words with justifications in a product's operating manual are sufficient, or whether they must be affixed to the product itself.

Barbe also states at his deposition (but not in his report) that the warnings on the Circular Saw itself "could be a lot bigger" and Makita "could have put it in red to make it stand out."  Barbe Tr. at 140.  However, Barbe does not support his opinion with any data, knowledge, experience or industry standard establishing that the warnings on the Circular Saw should have been larger or red based on his expertise or industry standards.  *Id*.

Barbe fails to support his conclusion that Makita's warnings were insufficient and caused Plaintiff's injury on reliable methodology, industry standards, data or personal knowledge or experience.

19

IV.   **Conclusion: Motion to Exclude Expert**

Barbe's report fails to establish that he is qualified to serve as an expert in handheld circular saw safety, the efficacy or necessity of riving knives on such products, or the sufficiency of warning labels.  In addition, Barbe's report includes no analysis explaining his conclusions that the Circular Saw was unsafe as produced without a riving knife or that the Circular Saw's warnings were deficient.  Barbe's conclusions lack any intelligible explanation, and would not be "valuable to the trier of fact."  *Duchimaza*, 2016 WL 5799295 at *5.  Nor was Barbe able to expound upon his credentials or analysis or otherwise remedy any of the deficiencies in his report during his deposition.  It is accordingly unnecessary to hold an evidentiary hearing to determine the admissibility of Barbe's proffered report or proffered testimony.  Defendant's Motion to Exclude Plaintiff's Expert is accordingly GRANTED.

V.   **Standard of Review: Motion for Summary Judgment**

The Court next considers Defendant's Motion for Summary Judgment in light of the exclusion of Plaintiff's expert.

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion."  Fed. R. Civ. P. 56(a).  In order to prevail, the moving party must sustain the burden of proving that no factual issues exist.

*Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought.  *Id.*  (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied."  *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315-16 (2d Cir. 2006) (quotation omitted).  In addition, "the court should not weigh evidence or assess the credibility of witnesses" on a motion for summary judgment, as "these determinations are within the sole province of the jury."  *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996).

"A party opposing summary judgment 'cannot defeat the motion by relying on the allegations in [her] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible.'  At the summary judgment stage of the proceeding, [p]laintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient."  *Welch-Rubin v. Sandals Corp.*, No. 3:03-cv-481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (quoting *Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir. 1996)).  "Summary judgment cannot be defeated by the presentation . . . of but a 'scintilla of evidence' supporting [a] claim."  *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010) (quoting *Anderson*, 477 U.S. at 251).

A court must make the threshold determination of whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.  *Anderson*, 477 U.S. at 250. Judges are not required "to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party.  Formerly it was held that if there was what is called a *scintilla* of evidence in support of a case the judge was bound to leave it to the jury, but recent decisions of high authority have established a more reasonable rule, that in every case, before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed."  *Anderson*, 477 U.S. at 251 (citing *Pennsylvania R. Co. v. Chamberlain,* 288 U.S. 333, 343 (1933); *Coughran v. Bigelow,* 164 U.S. 301, 307 (1896)).  Indeed, summary judgment should be granted where the evidence is such that it "would require a directed verdict for the moving party."  *Sartor v. Arkansas Gas Corp.*, 321 U.S. 620, 624 (1944).

"A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials."

Fed. R. Civ. P. 56(c)(1).  A party may also support their assertion by "showing that the materials cited do not establish the absence . . . of a genuine dispute."  *Id.* Cited documents must consist of either "(1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial."  Local R. Civ. P. 56(a)3; *see also* Fed. R. Civ. P. 56(c)(4).

The Court need not consider any materials that the parties have failed to cite, but may in its discretion consider other materials in the record.  Fed. R. Civ. P. 56(c)(3).  If a party fails to properly support an assertion of fact, or fails to properly address another party's assertion of fact, the Court may grant summary judgment on the basis of the undisputed facts.  D. Conn. L. Rule 56(a)(3) (stating that "failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming certain facts that are supported by the evidence admitted in accordance with [Local] Rule 56(a)(1) or in the Court imposing sanctions, including . . . an order granting the motion if the undisputed facts show that the movant is entitled to judgment as a matter of law").

VI.  <u>Discussion: Motion for Summary Judgment</u>

Plaintiff claims the Circular Saw's lack of a riving knife constitutes a design defect and that Makita failed to adequately warn Plaintiff of the product's risk of kickback.  Upon review of all facts supported by evidence properly admitted to the record, the Court finds no genuine issues of fact that would preclude summary judgment.

A. **Plaintiff's Design Defect Claim**

Plaintiff's Complaint alleges the Circular Saw "was in a defective and unreasonably dangerous condition and could not be used without unreasonable risk of injury." [Dkt. 1-1 (Complaint) at 2.]  Defendant argues summary judgment is appropriate because the alternative design theory Plaintiff asserts – that if the Circular Saw had been fitted with a riving knife, it would not have caused Plaintiff's injury – requires expert testimony, and that Plaintiff's expert is inadequate.  [Dkt. 43, 64 (Summary Judgment Motion and Supplement).]

Plaintiff responds that the alternative design theory does not require expert testimony as a matter of law, and does not require it in this case because it is clear that an alternative design including a riving knife would have prevented Plaintiff's injury.  [Dkt. 53, 65 (Summary Judgment Opposition and Supplement).]

"All [products liability] claims, whether alleging a design defect, manufacturing defect or failure to warn defect, are governed by the same elements that this court has applied since it adopted § 402A:

> (1) the defendant was engaged in the business of selling the product;
> (2) the product was in a defective condition unreasonably dangerous to the consumer or user;
> (3) the defect caused the injury for which compensation was sought;
> (4) the defect existed at the time of the sale; and
> (5) the product was expected to and did reach the consumer without substantial change in condition."

*Bifolck v. Philip Morris*, 324 Conn. 402, 433–36 (2016) (citing *Izzarelli* v. *R.J. Reynolds Tobacco Co.*, supra, 321 Conn. at 184–85, 136 A.3d 1232).

Step two of the analysis, the "unreasonably dangerous" test, requires the application of either (1) the risk-utility test (formerly called the modified consumer expectation standard) or (2) the consumer expectation standard.  *Id.*  Connecticut

determined which test applies in *Izzarelli v. Reynolds Tobacco Co.*, 321 Conn. 172 (2016):  "The [risk-utility or] modified consumer expectation test is our primary test.  The ordinary consumer expectation test is reserved for cases in which the product failed to meet the ordinary consumer's *minimum* safety expectations, such as *res ipsa* type cases.  *Id.* at 194.

Connecticut elaborated on what is required of the two tests a few months later in *Bifolck v. Philip Morris*, 324 Conn. 402, 433–36 (2016): "For a strict liability claim alleging design defect, the plaintiff may prove this element under the risk-utility test or under the consumer expectation test.  Under the risk-utility test, which will govern most cases, a product is in a defective condition unreasonably dangerous to the consumer or user if:

> (1) A reasonable alternative design was available that would have avoided or reduced the risk of harm and the absence of that alternative design renders the product unreasonably dangerous. In considering whether there is a reasonable alternative design, the jury must consider the feasibility of the alternative. Other relevant factors that a jury may consider include, but are not limited to, the ability of the alternative design to reduce the product's danger without unreasonably impairing its usefulness, longevity, maintenance, and esthetics, without unreasonably increasing cost, and without creating other equal or greater risks of danger; or
>
> (2) The product is a manifestly unreasonable design in that the risk of harm so clearly exceeds the product's utility that a reasonable consumer, informed of those risks and utility, would not purchase the product. The factors that a jury may consider include, but are not limited to, the magnitude and probability of the risk of harm, the instructions and warnings accompanying the product, the utility of the product in relation to the range of consumer choices among products, and the nature and strength of consumer expectations regarding the product, including expectations arising from product portrayal and marketing.

Under either approach to the risk-utility test, the fact finder considers whether the risk of danger inherent in the challenged design outweighs the benefits of that design. *Id.* at 433–36.

Alternatively, in *res ipsa loquitor* cases, where the consumer expectation test applies, a product is in a defective condition unreasonably dangerous to the consumer or user only if it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Id.* (citing 2 Restatement (Second), supra, § 402A, comment (i), p. 352). The product must fail to meet legitimate, commonly held, minimum safety expectations of that product when used in an intended or reasonably foreseeable manner. Those expectations may be informed by consumers' experience with the product, the seller's express representations, and product safety laws. *Id.*

The Circular Saw does not present the rare "*res ipsa* type case" that fails to meet "minimum consumer expectations," as the Plaintiff used the Circular Saw without incident approximately 50 times over a period of 15 years for many purposes, including the purpose for which he was using it at the time of his accident. *Izzarelli*, 321 Conn. at 194.

Turning to the risk-utility test, the question becomes whether the risk-utility test requires expert testimony. Neither *Izzarelli* nor *Bifolck* state explicitly that expert testimony is required under the risk-utility test. However, both cases suggest it by juxtaposing the consumer expectation test, which does not require expert testimony, and the risk-utility test. Regardless, the Court need not

26

determine here whether the Connecticut Supreme Court intended to create that requirement.  Rather, the Court finds that even if expert testimony is not required to establish a design defect through the alternative design theory, summary judgment is still appropriate in this case.

Plaintiff's sole factual support that the Circular Saw was defectively designed is that (1) the instruction manual for the Circular Saw acknowledges that kickback can occur when using the product and (2) Makita makes circular saws fitted with riving knives in Europe.  [Dkt. 53 at 5-6 (citing Manual; Dkt. 54 at Exs. B and C).]  Plaintiff supports its contention that Makita makes circular saws with riving knives in Europe with a printout of two webpages that appear to sell a Makita 5903R circular saw with a riving knife.  [Dkt. 54 at Exs. B, C.] Plaintiff offers no authority for the proposition that a product safety warning is indicative of a design defect.  Such a proposition is inconsistent with Barbe's opinion that the Circular Saw warnings failed to meet safety engineering warning standards. There would be no warning standards if giving a warning meant the product was unsafe.  There are dangers inherent in using any product.  The purpose of giving warnings is to alert the product user of the inherent risks of a particular product to enable the user to use it safely.  The law encourages manufactures to warn of dangers; it does not create liability for giving them unless they are inadequate. Restatement (Third) of Torts: Products Liability § 2(c) (1998).

The website at the bottom of Exhibit B is www.makitauk.com, and the website at the bottom of Exhibit C is www.toolstop.co.uk.  Defendant notes that both exhibits show the Makita 5903R, which is a different model from the Circular

Saw (Makita 5007NBA).  [Dkt. 60 (Reply in Support of Summary Judgment).]
Defendant also notes Plaintiff has offered no evidence that the Makita 5903R was
available in 1990, when Plaintiff's Circular Saw was manufactured.  *Id.* at 9-10
(citing Haefner Tr. at 50 (stating Plaintiff's Circular Saw was manufactured in
October 1990 based on the coding on the saw's label, which reads "90.10").)
Finally, Defendant asserts Plaintiff's Exhibits B and C are inadmissible and
accordingly may not be considered on summary judgment.

Plaintiff's evidence does not establish that a "reasonable alternative design
was available that would have avoided or reduced the risk of harm and the
absence of that alternative design renders the product unreasonably dangerous."
*Bifolck*, 324 Conn at 416.  As Defendant notes, Plaintiff's two internet printouts do
not establish that the Makita 5903R is a reasonable alternative to the Makita
5007NBA.  Nor do Plaintiff's internet printouts establish that the Makita 5903R
was available in 1990, when Plaintiff's Circular Saw was manufactured.  Even if
Plaintiff's internet printouts could establish those facts, Plaintiff asserts no facts
indicating the Makita 5903R's design reduces the risk of harm as compared to the
Makita 5007NBA.  For the proposition that a circular saw design including a riving
knife "would have prevented the circular saw from kicking back . . . and would
have also provided a barrier between the spinning saw blade and the Plaintiff's
finger," Plaintiff cites only Barbe's report, which has been excluded.  [Dkt. 53 at 5-
6 (citing Dkt. 54 at Ex. A (Barbe's Report)); Dkt. 58 (Plaintiff's Rule 56(a)(2)
Statement) (citing Barbe's Report to assert "a riving knife . . . would have
remedied the defective condition of the defendant's saw").]

Plaintiff admits that he was not following the safety instructions for the Circular Saw at the time he was injured.  He admits that the instructions stated the wood should be clamped down and that the user should keep both hands on the saw while in use.  He further admits that he did neither.  Plaintiff has not established that he would have been injured if he had used the Circular Saw in the manner intended and instructed by Defendant.

Further, Defendant correctly notes that the Court may only consider admissible evidence on summary judgment.  *Feingold v. N.Y.*, 366 F.3d 138, 155 (2d Cir. 2004).  Plaintiff has not properly authenticated Exhibits B and C pursuant to Federal Rule of Evidence 901, which requires the proponent to "produce evidence sufficient to support a finding that the item is what the proponent claims it is."  *See also, e.g., Novak v. Tucows, Inc.*, 06-cv-1909, 2007 WL 922306, at *5 (E.D.N.Y. Mar. 26, 2007) (striking internet printouts because plaintiff was unable to authenticate them, citing *U.S. v. Jackson*, 208 F.3d 633, 638 (7th Cir. 2000) and *St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F. Supp. 2d 773, 775 (S.D. Tex. 1999) for the proposition that "anyone can put anything on the internet.  No web-site is monitored for accuracy and nothing contained therein is under oath or even subject to independent verification absent underlying documentation").  Even if they could help establish Plaintiff's design defect claim, Plaintiff's Exhibits B and C would be inadmissible at trial and are an inappropriate basis to deny summary judgment.

Nor has Plaintiff met the requirements of *Bifolck*'s second avenue for recovery under the risk-utility test, that the "product is a manifestly unreasonable

design in that the risk of harm so clearly exceeds the product's utility that a reasonable consumer, informed of those risks and utility, would not purchase the product."  *Id.* at 416.  Plaintiff cites exclusively to Barbe's Report and Barbe's deposition testimony to establish that the Circular Saw's lack of a riving knife rendered it defective.  [Dkt. 53 at 5-6 (citing Dkt. 54 at Ex. A (Barbe's Report)); Dkt. 58 (citing Barbe's Report and Deposition).]  Plaintiff points to no evidence suggesting the risk of harm created by having no riving knife exceeds the Circular Saw's utility.  In fact, the Circular Saw's utility appears substantial, as Plaintiff used it without incident 50 to 100 times for 15 years prior to the accident. Karavitis Tr. at 40-42.

Defendant's motion for summary judgment on Plaintiff's design defect claim is accordingly GRANTED.

### B.  Plaintiff's Failure to Warn Claim

Plaintiff's Complaint alleges "the Defendant failed to warn or instruct the Plaintiff [that the Circular Saw] was unreasonably dangerous and defective," and the "warnings and instructions which were given and which accompanied said product were inadequate and failed to provide sufficient and/or any notice to the Plaintiff of the dangerous propensities of said product."  Complaint at 2. Defendant asserts summary judgment is appropriate on Plaintiff's failure to warn claim because Plaintiff cannot show that a different warning would have altered his behavior and prevented his injury.  [Dkt. 43 at 12.]  Plaintiff responds that Makita's warnings were insufficient and that "if a proper warning had been used it may have changed the use of the saw by the Plaintiff."  [Dkt. 53 at 10-11; Dkt. 58

30

at 3-4.]  Plaintiff cites exclusively to Barbe's report and deposition testimony to support its failure to warn claim.  [Dkt. 53 at 10-11; Dkt. 58 at 3-4.]

The same five elements that govern design defect claims also govern failure to warn claims: (1) a defendant who sold the product in question, (2) which was defective and unreasonably dangerous, (3) where the defect caused the plaintiff's injury, (4) the defect existed at the time of sale, and (5) the product reached the consumer without substantial change in condition.  *Bifolck*, 324 Conn. at 433–36.  At step two for a failure to warn claim, to determine whether instructions or warnings were required and, if required, whether they were adequate (rather than defective), the fact finder may consider:

> 1) The likelihood that the product would cause the harm suffered by the claimant;
>
> (2) the ability of the product seller to anticipate at the time of manufacture that the expected product user would be aware of the product risk, and the nature of the potential harm; and
>
> (3) the technological feasibility and cost of warnings and instructions.

Conn. Gen. Stat. § 52-572q(b).  At step three, "the claimant shall prove by a fair preponderance of the evidence that if adequate warnings or instructions had been provided, the claimant would not have suffered the harm."  § 52-572q(c)

Expert testimony is not required as a matter of law to establish that a warning was defective.  *Pitterman v. Gen. Motors LLC*, 3:14-cv-0967, 2016 WL 1732710, at *11 (D. Conn. Apr. 29, 2016) ("The parties have not cited, nor is the court aware of, any case in which a court applying Connecticut law has held that expert testimony is required, as a matter of law, in order for a plaintiff to prevail on an inadequate warning claim.")  However, expert testimony is required when

"the issues involved go beyond the field of ordinary knowledge and experiences of the trier of fact." *Id.* (citing *D'Ascanio v. Toyota Indus. Corp.*, 309 Conn. 663, 674 (2013).

Plaintiff cites *Pitterman* to assert expert testimony is not necessary to determine whether a warning is defective.  [Dkt. 65 at 7.]  In *Pitterman*, the defendant manufactured a vehicle that could be shifted out of the park position without depressing the brake pedal when the keys were in the "accessory" position in the ignition.  2016 WL 1732710 at *5.  This allowed a child sitting in the vehicle to shift it from park to neutral, which allowed the vehicle to roll into the street, causing an accident and killing the child.  *Id.* at *5.  The owner's manual for the vehicle warned that the vehicle could be shifted out of park without depressing the brake when the key was shifted to the "accessory" position.  *Id.* at 10.  The Court found expert testimony was not required to determine whether the warning was defective because "it would not go beyond the field of ordinary knowledge and experience to ask a layperson – who has been informed of the risks associated with [a vehicle that can shift out of park without depressing the break while in the auxiliary position] – to look at the 'warnings' contained in the owner's manual and determine if those 'warnings' were sufficient."  *Id.* at *11.

*Pitterman* does hold, as Plaintiff asserts, that expert testimony is not necessary to determine whether warnings are defective in all failure to warn cases.  It does not, however, indicate that expert testimony is unnecessary in this case.  The question raised by *Pitterman* is whether a jury could understand the risks associated with the product as designed without expert testimony, such

32

that the jury could then assess whether the warnings provided adequately addressed those risks.  Although the Court has excluded Plaintiff's expert, it is somewhat illuminating that he testified at his deposition that the average American consumer "wouldn't know a riving knife exists," and that no power tool salesman at any of four stores he visited had ever heard of one.  Barbe Tr. at 182-83.  The parties present no other evidence suggesting the danger of kickback on portable handheld circular saws without riving knives is something a jury could discern without expert testimony.  Accordingly, the Court concludes expert testimony would be required to establish that Makita's warnings and instructions were defective.

Similarly, expert testimony is not required as a matter of law to establish that a defective warning caused the plaintiff's injury.  *See, e.g.*, *Johannsen v. Zimmer, Inc.*, 3:00-cv-2270, 2005 WL 756509, at *9 (D. Conn. Mar. 31, 2005) (finding expert testimony on causation in a design defect and failure to warn case).  However, expert testimony is required where "necessary to determine the effect of [the product] and to determine whether it caused [Plaintiff's] injuries."  *Sullivan v. Pfizer, Inc.*, 2016 WL 868155, at *4 (D. Conn. Mar. 4, 2016) (requiring expert testimony on effect of Lipitor on the body and whether the failure to warn about those effects caused Plaintiff's heart attack).

The Court also notes that "[g]enerally, questions regarding the existence of a causal link are reserved for the trier of fact . . . . [H]owever, the issue becomes one of law when the mind of a fair and reasonable person could reach only one conclusion."  *Haesche v. Kissner*, 229 Conn. 213, 218 (1994) (granting summary

judgment on a failure to warn claim because it was clear the 17 year-old Plaintiff would have continued to play 'war games' with his friend with his BB gun despite additional warnings).   Here, Plaintiff admits that he did not read and was not following the safety instructions for the Circular Saw at the time he was injured and thus would not have followed the additional warnings which he clams the Defendant should have given.

Whether or not expert testimony would be necessary to establish causation in this case, Barbe's report and deposition are the only evidence Plaintiff cites to establish that Makita's allegedly defective warnings caused his injury.  [Dkt. 53 at 10-11; Dkt. 58 at 3-4.]  Even if the Court had not excluded Plaintiff's expert, Barbe's statements would be insufficient to establish causality, as Barbe admitted at his deposition that he did not know whether alternative instructions or warnings would have prevented Plaintiff's injury.  Barbe Tr. at 96.  The Court also notes Plaintiff testified he did not re-read the Circular Saw's instruction manual after his first year of Circular Saw ownership, roughly 15 years before the accident, and could not recall at the time of his deposition whether there were any warnings on the Circular Saw itself.  Karavitis Tr. at 42.  *Id*. at 34.  It is clear that Plaintiff did not review Makita's warnings within 15 years of his injury, and accordingly no "fair and reasonable person" could conclude that different warnings would have altered Plaintiff's behavior and prevented his injury. *Haesche*, 229 Conn. at 218.

Moreover, expert testimony is particularly necessary here as there are multiple factors which may have contributed to Plaintiff's injury.  Plaintiff admits

**34**

that he was not holding the Circular Saw with two hands and that he did not clamp down the wood as the Defendant's instructions advised.  Since Plaintiff does not have a credible expert, Plaintiff cannot establish that Makita's warnings were defective and that defective warnings were a proximate cause of is injury.

Defendant's Motion for Summary Judgment on Plaintiff's failure to warn claim is accordingly GRANTED.

C.   <u>Additional Claims Suggested in the Complaint</u>

Plaintiff's Complaint does not include enumerated counts.  However, it clearly asserts design defect and failure to warn.  To the extent Plaintiff's Complaint could also be construed to assert breach of the implied warranty of merchantability or breach of express warranties that the product was "safe and effective," those claims also warrant summary judgment.

To establish breach of the implied warranty of merchantability, a plaintiff must show that the product sold is not "fit for the ordinary purposes for which such goods are used."  Conn. Gen. Stat. § 42a-2-315; *see also Schenck v. Pekley*, 176 Conn. 245, 254 (1978).  Plaintiff has presented no evidence calling into question whether the Circular Saw was fit for the ordinary purpose for which saws are used.  Rather, Plaintiff indicated he had used the Circular Saw without any problems "over 50" times and "quite possibly" over 100 times for various home improvement projects before the accident.  Karavitis Tr. at 40-42.  Further, Barbe testified that when he used the Circular Saw it "cut fine."  Barbe Tr. at 119.  There is no question of fact that the Circular Saw was sold fit for the ordinary purpose of a saw.

To establish breach of an express warranty that the Circular Saw was "safe and effective for its use," a plaintiff must show that an express warranty was made by the seller through an "affirmation of fact or promise," a "description of the goods," or a "sample or model" which "is made part of the basis of the bargain" for sale, and is breached.  Conn. Gen. Stat. § 42a-2-313.  A cause of action for "breach of any contract for sale must be commenced within four years after the cause of action has accrued."  Conn. Gen. Stat. § 42a-2-725; *see also Latham & Assocs., Inc. v. William Raveis Real Estate, Inc.*, 218 Conn. 297, 303 n.3 (1991).  "A breach of warranty occurs when tender of delivery is made" or "when the breach is or should have been discovered."  Conn. Gen. Stat. § 42a-2-725; *see also Latham & Assocs., Inc.*, 218 Conn. at 303 n.3.  Plaintiff purchased the Circular Saw approximately 15 years before the accident occurred in 2013, and approximately 16 years before bringing this litigation.  Karavitis Tr. at 42; Complaint at 1.  Any breach of Makita's "express warranties" that the product was "safe and effective" should have been discovered upon Plaintiff's initial use of the Circular Saw or certainly within the first four years of use.  To the extent Plaintiff's Complaint asserts breach of express (or implied) warranties, it is time-barred.  Even if it were not time-barred, for the reasons stated elsewhere in this Decision, Plaintiff has not raised a question of fact as to whether the Circular Saw was unsafe or ineffective.

No evidence is before the Court creating a question of fact for the jury to resolve regarding the implied warranty of merchantability or express warranties

regarding safety and effectiveness.  To the extent those additional claims are asserted in the undifferentiated Complaint, summary judgment is granted.

VII.   **Conclusion**

      For the foregoing reasons, Defendant's Motion to Exclude Expert and Motion for Summary Judgment are GRANTED.  The Clerk is directed to close this file.

                      IT IS SO ORDERED.

                     _____/s/_____

                     Hon. Vanessa L. Bryant
                     United States District Judge

Dated at Hartford, Connecticut:  March 20, 2017